**Jaburg & Wilk, P.C.**
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000

Alden A. Thomas (031900)
aat@jaburgwilk.com
Corrinne R. Viola (033386)
crv@jaburgwilk.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Susan Casaceli,<br><br>　　　　Plaintiff/Counterdefendant,<br><br>v.<br><br>Liberty Healthcare Corporation,<br><br>　　　　Defendant/Counterclaimant. | Case No. 2:21-cv-01413-PHX-JJT<br><br>**PLAINTIFF SUSAN CASACELI'S RESPONSE IN OPPOSITION TO DEFENDANT LIBERTY HEALTHCARE CORPORATION'S MOTION FOR ATTORNEY'S FEES AND NON-TAXABLE COSTS** |

Plaintiff Susan Casaceli files this Response in Opposition Defendant Liberty Health Care Corporation's ("Liberty") Motion for Attorney's Fees and Non-taxable Costs ("the Motion"). The Motion should be denied for five primary reasons. First, Liberty is not entitled to its attorney's fees because the Motion fails to comply with the requirements set forth in LRCiv 54.2. Second, Liberty may not recover fees that were block billed, excessive, duplicative, and incurred performing secretarial/administrative work. Third, Liberty may not recover fees and costs incurred defending Casaceli's Title VII and/or Arizona Civil Rights Act ("ACRA") claims because such claims were not frivolous, unreasonable, or without foundation. Fourth, Liberty is not entitled to its fees and costs incurred defending Casaceli's Arizona Employment Protect Act ("AEPA") claim or incurred pursuing its unsuccessful counterclaims because it has cited no statutory basis

permitting the recovery of such fees and costs, and such claims were not inextricably intertwined with Casaceli's Title VII and ACRA claims. Fifth, Liberty may not recover non-taxable costs that are unsupported and/or that were incurred by its insurance carrier as a routine business expense.

Pursuant to LRCiv 54.2(f), Casaceli has identified the disputed time and cost entries and explained the basis for her objections in the document attached as "Exhibit A." Casaceli has also disputed several of Liberty's non-taxable costs, the objections for which are attached as "Exhibit B." This Response is supported by the following Memorandum and Points of Authorities.

## MEMORANDUM AND POINTS OF AUTHORITIES

### I.  Background Information & Procedural History

On July 20, 2021, Casaceli filed suit against Liberty. (Doc. 4, Exh. A). As set forth in the Complaint, Liberty employed Casaceli as its Executive Director. (*Id.* at ¶ 26). Her responsibilities included overseeing a contract Liberty entered into with the Arizona Department of Economic Security's Division of Developmental Disabilities ("DDD") ("the DDD Contract"). (*Id.* at ¶ 27). Among other things, she hosted virtual meetings with the DDD and her staff. (*Id.* at ¶ 35). At these meetings, DDD employees were overtly hostile and made false, misleading, slanderous, defamatory and inappropriate comments to and about Casaceli and her female colleagues, which she reported to her superiors at Liberty. (*Id.* at ¶¶ 36-37). However, Liberty took no action, and the harassment remained ongoing. (*Id.* at ¶¶ 38-39, 43-48).

Furthermore, Casaceli reported to her superiors that Liberty made material misrepresentations in its response to the DDD's Request for Proposal, which ultimately led it to secure the DDD Contract. (*Id.* at ¶¶ 7-18, 30-34, 88-91). She also reported employees failed to comply with the requirements set forth in the DDD Contract and needlessly increased the DDD's expenses for Liberty's profit.  (*Id.* at ¶¶ 56-69). Casaceli also reported that Liberty submitted unsubstantiated invoices the DDD and defrauded it by double billing it. (*Id.* at ¶¶ 73-77).

#21527-00002/AAT/CRV/5757554v2

In retaliation for reporting the harassment she and other female Liberty employees experienced from DDD employee along with Liberty's unlawful conduct related to the DDD contract, Liberty placed Casaceli on baseless performance improvement plans ("PIPs") and wrote her up. (*Id.* at ¶¶ 78-86). This retaliation culminated with Liberty terminating her employment. (*Id.* at ¶ 92).

Casaceli raised claims for wrongful termination in violation of the AEPA (Count One), sex discrimination in violation of Title VII and the ACRA (Counts Two & Four), retaliation in violation of Title VII and the ACRA (Counts Three & 5). (*Id.* at ¶¶ 97-135). The AEPA claim arose from Liberty terminating her employment in retaliation for reporting Liberty's unlawful misrepresentations and billing practices in connection with the DDD contract along with her refusal to engage in such unlawful conduct. (*Id.* at ¶¶ 97-106). The sex discrimination claims arose from Liberty failing to take appropriate action in response to the gender-based hostile work environment Casaceli and other women were subjected to as a result of the DDD employees' conduct. (*Id.* at ¶¶ 107-116, 123-128). The remaining gender retaliation claims arose from the retaliatory actions Liberty took against Casaceli, including placing her on PIPs, disciplining her, and terminating her employment, after she reported her gender-based hostile work environment to her superiors. (*Id.* at ¶¶ 117-122, 129-135).

On August 23, 2021, Liberty filed its Answer and Counterclaims. (Doc. 10). Therein, it filed counterclaims for misappropriation of trade secrets and conversion. (*Id.*) Its trade secret misappropriation claim arose from Casaceli emailing herself documents that are publicly available and may also be obtained by submitting a public records request to the DDD. (*Id.* at ¶¶ 15-21). Its conversion claim was based upon Casaceli temporarily maintaining possession of a Liberty laptop that she returned to the company. (*Id.* at ¶¶ 15-21).

On February 24, 2023, Liberty filed a motion for summary judgment with respect to Casaceli's claims and its conversion counterclaim. (Doc. 52). The Court granted the motion with respect to Casaceli's claims, but denied it with respect to Liberty's

3

1  counterclaim. (Doc 66). The Court's order evaluated the evidence presented by both
2  parties and is twenty-two pages long. (*Id.*).

3  Importantly, the Court recognized "Plaintiff has established a *prima facie* case"
4  under the AEPA and for retaliation in violation of Title VII and the ACRA. (*Id.* at 14:5-
5  7, 21:3-6). However it held that both claims failed because after Liberty met its burden of
6  articulating a legitimate, non-retaliatory basis for terminating Casaceli pursuant to
7  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the evidence Casaceli
8  produced demonstrating temporal proximity between her protected activities and the
9  adverse employment actions, Liberty's changing justifications for terminating her
10 employment, and Liberty's financial motivations for terminating her were insufficient to
11 meet her burden of demonstrating pretext. (*Id.* at 14:9-16:16, 21:3-10).

12 Regarding the Title VII and ACRA hostile work environment claims, the Court
13 held Casaceli furnished sufficient evidence that she and other women were subjected to
14 gender-based conduct they believed to be severely hostile. (*Id.* at 19:22-23). However, it
15 granted summary judgment after finding she failed to demonstrate the harassment was
16 sufficiently severe and/or pervasive to give rise to liability. (*Id.* at 20:6-9).

17 The Court later scheduled trial to resolve Liberty's counterclaims. The
18 undersigned sent Liberty's counsel a Rule 11 letter requesting that Liberty voluntarily
19 dismiss its counterclaims because Liberty failed to disclose any evidence supporting its
20 counterclaims. Pursuant to a stipulation, Liberty dismissed its counterclaims, with the
21 Parties agreeing to bear their own fees and costs. (Doc. 72).

22 **II.   Liberty is Not Entitled to its Attorney's Fees and Costs**
23 **A.   The Motion Failed to Comply with LRCiv 54.2**
24 Liberty is not entitled to an award of its attorney's fees because the Motion failed
25 to comply with LRCiv 54.2. "As to attorneys' fees, LRCiv 54.2(c) requires any party
26 seeking an award of attorneys' fees to file a motion that discusses three specific matters:
27 (i) eligibility; (ii) entitlement; and (iii) reasonableness of requested award." *Perkins v.*
28 *Ally Fin. Inc.*, No. CV-21-01717-PHX-SPL, 2022 WL 1664283, at *2 (D. Ariz. May 25,

2022). With respect to the third element, motions for attorney's fees should specifically focus on the factors listed in LRCiv 54.2(c)(3) and the *Kerr* factors, which include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* (*citing Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

Liberty is not entitled to an award of its attorney's fees because the Motion fails to address the majority of factors outlined in LRCiv 54.2(c)(3) and *Kerr*. Among other things, it does not address the: (1) novelty and difficulty of the questions involved; (2) the skill requisite to perform the legal service properly; (3) the preclusion of other employment by the attorney due to acceptance of the case; (4) time limitations imposed by the client or the circumstances; (5) the "undesirability" of the case; (6) the nature and length of the professional relationship with the client; and (7) awards in similar cases.

By failing to address these factors, the Court cannot evaluate the reasonableness of the requested award. "The requirements of LRCiv 54.2 are not mere formalities, but rather necessary support that any party seeking an award of fees must proffer so that the Court may carry out its duty to ensure that the requested fees are reasonable." *Id.*; *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018) (Courts "have a *duty* to ensure that claims for attorneys' fees are reasonable")

Furthermore, LRCiv 54.2(d)(2) requires movants to disclose pertinent documents, including:

> **(d) Supporting Documentation.** Unless otherwise ordered, the following documentation shall be attached to each memorandum of points and authorities filed in support of a motion for award of attorney's fees and related non-taxable expenses:

> (2) Fee Agreement. A complete copy of any written fee agreement, or a full recitation of any oral fee agreement, must be attached to the supporting memorandum. If no fee agreement exists, then counsel must attach a statement to that effect.

The Motion fails to comport with this requirement. Consequently, neither the Court nor Casaceli may evaluate the nature of Liberty's representation agreement with counsel, whether Liberty's counsel billed fees commensurate with that agreement, the reasonableness of the costs Liberty seeks, whether it had an agreement with counsel to pay such costs, among other considerations. Finally, many of Liberty's time entries fail to detail the nature of the work counsel performed in violation of LRCiv 54.2(e)(2). Accordingly, the Court should deny the Motion. *See Kyle v. Campbell Soup Co.*, 28 F.3d 928, 932 (9th Cir. 1994) (vacating award of attorney's fees when prevailing party failed to file motion for attorney's fees in compliance with local rules). *Transp. Factoring Assocs. Inc. v. United Cap. Funding Corp.*, No. CV-05-508-PHX-SMM, 2006 WL 1816997, at *2 (D. Ariz. June 29, 2006) ("Because Defendant has failed to comply with the requirements of LRCiv 54.2, the Court lacks sufficient information to decide the propriety of awarding fees in this case, and thus Defendant has not satisfied its burden of proving entitlement to such an award.").

**B.    Liberty is Not Entitled to Fees that are Block Billed, Secretarial, or Where There is a Duplication of Effort**

Casaceli objects to Liberty's time entries that are block billed, excessive, wherein multiple timekeepers performed the same function, and that reflect secretarial and/or administrative work. See *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (affirming reduced award for block billed time entries); *Arnhoelter v. Kaus*, No. CV-20-00403-PHX-JAT, 2020 WL 4673160, at *5 (D. Ariz. Aug. 12, 2020) (""Where a party bills for clerical work, the amounts of any such entries may be subtracted from the total requested amount.").

### C. Liberty's Fees and Costs are Excessive Considering the Procedural History and Discovery Undertaken

When evaluating the reasonableness of a party's fees, the "court determines the 'lodestar' amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). "A district court should exclude from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Id.*

Through August 17, 2023, Liberty incurred $117,401.50 in attorney's fees for 542.40 hours of work defending a matter that was not particularly factually complex and involved legal claims for which the law is well established. Indeed, on one hand, counsel's declaration asserts that he and his partner Ravi Patel have "over [15 or 30] years of experience in the area of civil rights litigation," but on the other, asserts that attorney Stephanie Baldwin undertook research to successfully defend this lawsuit even though it presented no new or novel legal questions (*See* Doc. 74 at 8:23 – 26; *see also* Doc. 74-1, Exh. 1, ¶ 3). Conversely, Casaceli incurred approximately $55,000 in attorney's fees through October 31, 2023, and her counsel bills at higher rates than Liberty's counsel (Alden Thomas billed at $300 per hour, and Corrinne Viola billed at $250 per hour).

The amount of fees Liberty incurred is excessive considering this matter's procedural history, or more appropriately, lack thereof.[1] Liberty's counsel billed approximately <u>double</u> the number of hours the undersigned billed, despite the relative simplicity of this matter's procedural history. Liberty removed this lawsuit from state to District Court on August 17, 2021 (Docs. 1 – 5). Shortly thereafter, Liberty answered and alleged counterclaims (Doc. 10). Its answer was no more complicated than a general denial, and its counterclaims consisted of only 25 paragraphs. And yet, Liberty's counsel spent no less than 9.7 hours preparing its answer and counterclaim, which does not even include the multiple attorney conferences and meetings counsel had with Liberty to

---

[1] If the Court is inclined to award Liberty its fees and/or costs, Casaceli respectfully requests that it reduce its fees award pursuant to the Lodestar method.

7

#21527-00002/AAT/CRV/5757554v2

discuss the same (*See* Doc. 74-1, Exh. 7, entries dated August 10, 2021 – August 23, 2021). Moreover, Liberty attempts to charge for drafting counterclaims that were dismissed, with prejudice, each party to bear their own costs and fees (*Id.*; *see also* Docs. 71 and 72).

After Liberty answered and counterclaimed, the Parties submitted a joint report to the Court, the bulk of which was drafted by undersigned counsel, as is standard practice (Doc. 14). Shortly thereafter, the parties jointly participated in drafting a protective order (Doc. 21). The protective order was standard and did not necessitate extensive drafting of provisions specific to complex confidentiality and/or trade secret issues (*Id.*).

On November 3, 2022, the parties submitted a written discovery dispute, on which the Court held a hearing (Docs. 43 and 44). The hearing lasted no more than a half an hour.

On February 24, 2023, Liberty filed its dispositive motion. Other than some minor stipulations to extend deadlines and notices of service of discovery, neither party filed any other motions or pleadings. *See* record, generally. Save for summary judgment, this matter involved no motion practice. The Court did not require oral argument on the summary judgment motion. Neither side engaged in vexatious litigation. Indeed, the parties worked cooperatively to resolve issues and, at least from Plaintiff's perspective, in the interest of keeping fees and costs down. The procedural history of this matter certainly does not support an award of $117,401.50 in attorney fees.

The amount of fees is excessive considering the history of discovery in this matter. Regarding FRCP 26 disclosures, in total, Liberty served five disclosure statements – one initial, and four supplemental. None exceeded 6 pages of text. Liberty's disclosure statements also include disclosures relating to the counterclaims, which were dismissed, with prejudice, each party to bear their own costs and fees. (Docs. 71 and 72). In the Motion, Liberty does not bifurcate or explain which tasks are attributable to the defense of Casaceli's claims and which tasks are attributable to the prosecution of Liberty's

#21527-00002/AAT/CRV/5757554v2

counterclaims. While Casaceli maintains neither are compensable under applicable law, the former is certainly not compensable given this Court's order of dismissal (Doc. 72).

Liberty produced minimal documents in comparison to other matters; it disclosed approximately 832 pages of documents. The same is true for Casaceli – she served four disclosure statements, one initial, and three supplemental. In total, Casaceli produced 762 pages of documents. On this issue, it is worth noting that Liberty seeks to charge time spent on purely administrative matters to Casaceli. As one example, Ms. Seek charged .6 of an hour exchanging emails "from and to Lighthouse Global re: document production eDiscovery review platform…" (*See* Doc. 74-1, Exh. 7, October 19, 2021, entry). She later charged .4 of an hour strategizing regarding the "culling process" related to Liberty's use of Lighthouse Global (*Id*. at October 20, 2021, entry). There are multiple other entries related to counsel's use of an eDiscovery platform. This is not a matter that even warranted use of an eDiscovery platform (there was no electronic discovery at issue in this case). It is certainly not appropriate to charge firm-related administrative fees and costs to Casaceli. *See Joe Hand Promotions, Inc. v. Albright*, No. CIV. 2:11-2260 WBS, 2013 WL 4094403, at *3 (E.D. Cal. Aug. 13, 2013) ("ordinary administrative tasks typically subsumed within the overhead expenses of a law firm" are not recoverable costs).

Regarding discovery undertaken pursuant to FRCP 33 – 36, each party in this matter only served one set of discovery requests. Liberty served one set of requests for admission, one set of non-uniform interrogatories, and one set of requests for production. Casaceli served one set of non-uniform interrogatories and one set of requests for production. Casaceli's discovery requests also involved requests for information related to Liberty's counterclaims. Again, as it relates to responding to those requests, Liberty does not bifurcate or explain which tasks are attributable to the defense of Casaceli's claims and which tasks are attributable to the prosecution of Liberty's counterclaims.

Regarding depositions, Liberty took only one deposition – Casaceli's. Casaceli took the deposition of Kathryn Obert, a material witness. The parties completed each

#21527-00002/AAT/CRV/5757554v2

deposition in a single day. As it relates to Casaceli's deposition, at least some of the deposition consisted of questions and answers related to Liberty's counterclaims. For the third time, Liberty does not bifurcate or explain how much of their fees incurred in deposing Casaceli are attributable to the defense of Casaceli's claims, and which are attributable to the prosecution of Liberty's counterclaims.

The parties worked cooperatively in discovery and did not engage in obstreperous or harassing behavior. The discovery undertaken and procedural history of this matter does not justify a six-figure award for attorney fees.

**D.   Liberty May not Recover Fees and Costs Incurred Defending the Title VII and ACRA Claims**

"Because Congress intended to promote the vigorous enforcement of the provisions of Title VII, a district court must exercise caution in awarding fees to a prevailing defendant in order to avoid discouraging legitimate suits that may not be airtight." *E.E.O.C. v. Bruno's Rest.*, 13 F.3d 285, 287 (9th Cir. 1993) (punctuation and citation omitted). Defendants may recover attorneys' fees and costs from a plaintiff in civil rights cases only in exceptional circumstances." *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990); *Harris v. Maricopa Cnty. Superior Ct.*, 631 F.3d 963, 968 (9th Cir. 2011). Courts may award attorney's fees and costs to defendants that prevail on a Title VII claim only if the claim was frivolous, unreasonable, or without foundation. *Crowe v. Wiltel Commc'ns Sys.*, 103 F.3d 897, 900 (9th Cir. 1996).

As the United States Supreme Court has recognized:

> In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear

#21527-00002/AAT/CRV/5757554v2

> questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 421–22 (1978). In short, "a weak case is not tantamount to a frivolous case." *E.E.O.C. v. Maricopa Cnty.*, 339 F. App'x 688, 689 (9th Cir. 2009).

Liberty is not entitled to an award of its fees and costs defending Casaceli's Title VII claims because they were not frivolous, unreasonable, and/or without foundation. This is true notwithstanding the Court's grant of summary judgment on those claims. Indeed, the Court recognized that she proffered sufficient evidence to satisfy nearly every element of both her retaliation and discrimination claims. Importantly, the Court held Casaceli established a prima facie case of retaliation. (Doc 66. at 21:3-6). The only reason it granted summary judgment is because it found she failed to offer sufficient evidence that Liberty's justification for her termination was pretextual under the *McDonnell Douglas* burden-shifting paradigm. 411 U.S. 792. (*Id.* at 21:3-10). Accordingly, Liberty is not entitled to an award for its fees and costs incurred defending this claim. *See Warren v. City of Carlsbad*, 58 F.3d 439, 444 (9th Cir. 1995) (reversing trial court's order holding Title VII claim was frivolous when plaintiff made a prima facie showing of disparate treatment); *Burks v. California Highway Patrol*, 44 F. App'x 108, 109 (9th Cir. 2002) (prevailing defendant not entitled to attorney's fees when plaintiff made a prima facie case under Title VII).

With respect to the hostile work environment claim, Casaceli was required to show: (1) she was subjected to verbal or physical conduct that was gender-based, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. *Freitag v. Ayers*, 468 F.3d 528, 539 (9th Cir. 2006). The Court held she proffered sufficient evidence to establish the first two elements. (*Id.* at 19:22-23). It granted summary judgment after finding she failed to prove only the third element. (*Id.* at 20:6-9). Still, that does not render the claim frivolous, unreasonable, and/or without foundation. *See Williams v. State of*

11

*California Dep't of Corr.*, 13 F. App'x 717, 719 (9th Cir. 2001) (vacating award of attorney's fees to defendant in a Title VII retaliation case when plaintiff presented sufficient evidence of a protected activity and adverse employment action, but did not present sufficient evidence of causation); *E.E.O.C. v. Bruno's Rest.*, 13 F.3d 285, 290 (9th Cir. 1993) (reversing attorney's fee award to prevailing defendant when court found plaintiff's witnesses lacked credibility as such a finding did not establish claim was frivolous, unreasonable, or without foundation); *Christoforou v. Ryder Truck Rental, Inc.*, 668 F. Supp. 294, 304 (S.D.N.Y. 1987) (denying defendant's motion for fees when plaintiff failed to establish sexual harassment was sufficiently severe or pervasive to give rise to a hostile work environment).

### E. Liberty May not Recover Fees and Costs Incurred Defending the AEPA Claim or Pursuing its Counterclaims

Liberty is not entitled to an award for its attorneys' fees and costs incurred defending the AEPA claim and pursuing its counterclaims because it failed to cite statutory authority entitling it to such an award. *See* LRCiv 54.2(c)(1); *Lezama v. Clark Cnty.*, 817 F. App'x 341, 346 (9th Cir. 2020) (holding defendant was not entitled to fees incurred defending state law wrongful termination claim). Furthermore, the parties already stipulated to bearing their own fees and costs related to Liberty's counterclaims. (Doc. 72).

Furthermore, notwithstanding Liberty's claims to the contrary, the AEPA claim was not inextricably intertwined with the Title VII/ACRA claims because they were different claims for relief and were based on different facts and/or legal theories. *See Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 901 (9th Cir. 1995) ("the court must evaluate whether the successful and unsuccessful claims are distinctly different claims for relief that are based on different facts and legal theories or whether they "involve a common core of facts or are based on related legal theories") (punctuation and citation omitted); *Thorne v. City of El Segundo*, 802 F.2d 1131, 1142 (9th Cir. 1986) (reversing award of attorney's fees for Title VII and § 1983 claim).

Casaceli's AEPA claim arose from her reports of Liberty's unlawful activity, including its duplicative/fraudulent billing practices and the misrepresentations it made in connection with securing/servicing the DDD Contract. Conversely, both of her Title VII/ACRA claims arose from the harassment she and other women experienced at the hands of DDD employees. Her gender discrimination claims arose from third-party harassment and Liberty's failure to take appropriate action reasonably directed towards stopping the harassment. Conversely, her AEPA claim arose Liberty terminating Casaceli's employment in retaliation for reporting Liberty's unlawful conduct directed towards a third party. In short, the AEPA and gender discrimination claims share no common facts nor are they based upon related legal theories. *See id.*

While both the AEPA and Title VII retaliation claims share the same *Macdonald Douglas* framework, the claims arise from Casaceli engaging in protected activities that were completely distinct from each other. Again, the Title VII/ACRA retaliation claims arose from Casaceli's reports of the DDD's harassment of her and other female employees. Conversely, the AEPA claim arose from Liberty's unlawful conduct against the DDD. Thus, the claims did not arise from common facts.

Furthermore, much of Liberty's retaliatory conduct, including placing Casaceli on unjustified PIPs and writing her up, could only give rise to liability for retaliation in violation of Title VII and the ACRA *See Alozie v. Arizona Bd. of Regents*, 562 F. Supp. 3d 203, 214 (D. Ariz. 2021) (undeserved negative performance reviews are actionable adverse employment actions under Title VII). Conversely, the only form of retaliation that is actionable under the AEPA is Liberty's termination of Casaceli's employment. *See* A.R.S. § 23-1501(A)(3) ("An employee has a claim against an employer for termination of employment only if…"); *Whitmire v. Wal-Mart Stores Inc.*, 359 F. Supp. 3d 761, 796 (D. Ariz. 2019) (to prevail on an AEPA claim, plaintiff must show a causal link between a protected activity and the termination of her employment). In short, Casaceli's gender retaliation and AEPA claims do not arise from identical legal theories.

#21527-00002/AAT/CRV/5757554v2

Nevertheless, even if Court determines the AEPA and Title VII/ACRA claims are inextricably intertwined (they are not), Liberty is not entitled to its fees and costs defending the AEPA claim because the Title VII and ACRA claims were not frivolous, unreasonable, and/or without foundation for the reasons set forth above. *See Fabbrini v. City of Dunsmuir*, 631 F.3d 1299, 1302 (9th Cir. 2011) (holding that even if fees incurred briefing § 1983 motion were inextricably intertwined with fees incurred briefing anti-SLAPP motion, prevailing party was not entitled to fees because the § 1983 claim was not frivolous).

### F. Liberty is Not Entitled to its Unsupported "Non-Taxable Costs"

Liberty seeks nearly $11,000 in non-taxable costs that it purportedly incurred from numerous vendors. However, it has furnished supporting invoices from only two vendors, Lighthouse and Nationwide Legal, totaling only $3,810.84. (Doc. 74, Exh. 8[2]). Liberty may not recover costs it has not demonstrated it actually incurred. *See* LRCiv 54.2(e)(3) ("Failure to itemize and verify costs may result in their disallowance by the court."); *Figueroa v. Gannett Co. Inc.*, No. CIV 19-022-TUC-CKJ, 2023 WL 2464997, at *9 (D. Ariz. Mar. 10, 2023) ("the Court will limit the award of costs to those costs which are supported by documentation").

Liberty's invoices from Lighthouse were billed directly to RSUI Company, Inc., Liberty's insurance carrier, and total $3,758.34 for "database hosting" and related services. (*Id.*). However, it has failed to demonstrate such costs are not ordinarily incurred in the normal scope and course of RSUI's business. Indeed, Lighthouse billed these expenses directly to RSUI, not to Liberty and/or its counsel. Thus, Liberty is not entitled to reimbursement for such costs. *See Agster v. Maricopa Cnty.*, 486 F. Supp. 2d 1005, 1021 (D. Ariz. 2007) (not-taxable costs include costs attorneys typically bill to their clients).

---

[2] To the extent that Liberty relies on invoices that were submitted with their Bill of Costs (Doc. 75), Casaceli objects as Liberty cannot double recover these costs as both taxable and non-taxable.

#21527-00002/AAT/CRV/5757554v2

**III.  CONCLUSION**

For the foregoing reasons, Casaceli respectfully requests that the Court deny the Motion and award Liberty for its attorney's fees and non-taxable costs.

Respectfully submitted this 16th day of November, 2023.

**Jaburg & Wilk, P.C.**

/s/*Corrinne R, Viola*
Alden A. Thomas
Corrinne R. Viola
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
*Attorneys for Plaintiff*

#21527-00002/AAT/CRV/5757554v2

*Certificate of Service*

I hereby certify that on 16th day of November, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Gordon Lewis
Stephanie D. Baldwin
Jones, Skelton & Hochuli, P.L.C.
40 N. Central Avenue, Suite 2700
Phoenix, AZ  85004
GLewis@jshfirm.com
SBaldwin@jshfirm.com
*Attorneys for Defendant/Counterclaimant*

/s/ Joy Brown

#21527-00002/AAT/CRV/5757554v2